**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ROLANDO JIMENEZ**, | |
| Plaintiff, | |
| v. | Case No. 17-cv-2731 (CRC) |
| **CHAD R. WOLF**, | |
| Defendant. | |

**MEMORANDUM OPINION**

Plaintiff Rolando Jimenez is an employee of U.S. Citizenship and Immigration Services ("USCIS"), a component of the Department of Homeland Security ("DHS").  He brings a multitude of claims against Chad R. Wolf, in his capacity as acting Secretary of Homeland Security, alleging that USCIS has discriminated against him based on his race, national origin, and age, and retaliated against him for asserting his Equal Employment Opportunity ("EEO") rights.  In a prior opinion, this Court dismissed many of Mr. Jimenez's claims for either failure to exhaust administrative remedies or failure to state a claim.  Jimenez v. McAleenan (Jimenez I), 395 F. Supp. 3d 22, 27 (D.D.C. 2019).  Of Jimenez's remaining claims, all but one alleges discrimination based on his non-selection for eleven positions for which he applied in 2011 and 2012.  Prior to discovery, the government moved for summary judgment on Jimenez's non-selection claims.  The Court will grant the motion.

I. **Background**

Mr. Jimenez was born in the Dominican Republic in 1963 and has worked for USCIS and its predecessor agency since 1996.  Am. Compl. ¶¶ 18–19.  From 2006 until October 2016, he worked as an Immigration Officer in USCIS's Fraud Detection National Security Headquarters based in Washington, DC.  Id. ¶ 20.  Since then, he has served as a GS-14 Immigration Officer in

USCIS's Immigrant Investor Program Office, also in Washington.  Defendant's Statement of Facts Not in Genuine Dispute ("SOMF") ¶ 2, ECF 35-1.  Prior to the events at issue here, he engaged in protected EEO activity.

Following three agency EEO complaints, Jimenez brought suit in this Court, advancing eight counts based on twenty separate underlying events.  He alleges he has been discriminated against "based on his race (white),[1] national origin (Hispanic), age (YOB: 1963), and reprisal (prior EEO activity)."  Am. Compl. ¶ 1.  After filing an answer, the government moved for judgment on the pleadings, which the Court largely granted due to Jimenez's failure to exhaust and to state a claim.  See Jimenez I, 395 F. Supp. at 31–44.  At this point, only the following claims remain:  Counts II (retaliation based on prior EEO activity), III (race discrimination), V (national origin discrimination), and VII (age discrimination) to the extent that these claims are based on what the Court will refer to as Events 3 through 13 and 17.  (In its prior opinion, the Court laid out a numbering convention corresponding to Jimenez's allegations, which it will continue to use for the sake of clarity.)

As relevant here, Events 3 through 13 concern Jimenez's non-selection for various USCIS positions during a six-month span in 2011 and 2012.  The complaint contains no details whatsoever about these non-selections.  It alleges only that "[b]etween June 7, 2012 and September 14, 2012,[2] Plaintiff applied but was not selected for eleven positions within the

---

[1] Curiously, although his amended complaint identifies his race as white, Jimenez's Opposition contends that "Plaintiff does not identify as 'white.'"  Opp. 26.  In any case, this discrepancy is not material to the Court's analysis.

[2] Although Jimenez alleged in his complaint that the eleven non-selections occurred between June 2012 and September 2012, the government has introduced evidence, discussed more fully below, that Jimenez applied to the eleven positions between December 2011 and July

Agency," and "Plaintiff was qualified for each of the positions but was passed over without explanation."  Am. Compl. ¶¶ 26, 28.  Based on this scant description, the agency has determined that Jimenez is referring to the non-selections that were part of his 2012 EEO Complaint, Def.'s Mot. for Summ. J. ("MSJ") 2 n.2, and he accepts this characterization of his claims in his opposition to summary judgment, Pl.'s Opp. ("Opp.") 3–22.  Given the multitude of claims, the specific facts relating to each non-selection will be discussed in context below.

　　　　All eleven of these non-selections were part of Jimenez's 2012 EEO complaint.  After investigating the claims, USCIS issued a nine-volume Report of Investigation, which contained some twenty-eight witness affidavits and substantial additional evidence collected by the agency.  Thereafter, Jimenez requested a hearing before a U.S. Equal Employment Opportunity Commission Administrative Judge ("AJ").  Extensive discovery took place as part of the litigation before the AJ, including exchanges of interrogatories and document requests, and associated responses.  When Jimenez failed to appear for his deposition, the AJ imposed sanctions, dismissing Jimenez's hearing request and remanding the case to the agency.  See Mot. for J. Pleadings or Summ. J., Ex. 23 at 9, ECF 31-5.  On remand, DHS's Office for Civil Rights and Civil Liberties ("CRCL"), the entity responsible for issuing final agency decisions ("FADs") for USCIS, directed USCIS to conduct a further investigation regarding, as relevant here, Jimenez's non-selection for a vacancy in Monterrey, Mexico (Event # 6) and non-selection for a Supervisory Immigration Services Officer vacancy in Miami (Event # 9), so that the agency could make a determination concerning those events.  Mot. for J. Pleadings or Summ. J., Ex. 24,

---

2012.  The parties do not discuss this discrepancy.  In any event, Jimenez has accepted the government's characterization of his claims.  Pl.'s Opp. ("Opp.") 3–22.

2012 CRCL FAD at 13, ECF 31-5.  The agency conducted a further investigation and issued a supplemental ROI, bringing the ROIs to 10 volumes.  Id.

CRCL proceeded to issue a FAD, which concluded that no discrimination or retaliation had occurred.  Jimenez appealed that decision to the EEOC Office of Federal Operations, which affirmed.  Mot. for J. Pleadings or Summ. J., Ex. 25, 2012 EEOC Decision at 31-33, ECF 31-5.  Jimenez then commenced this litigation.  The government now moves for summary judgment on the eleven non-selection claims.

## II.   Legal Standards

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment must "show[] that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed R. Civ. P. 56(c).  A fact is material if it "might affect the outcome of the suit under the governing law," and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Additionally, for a factual dispute to count as "genuine," the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence in support of [its] position," id. at 252, and cannot rest on "mere allegations" or conclusory statements, see Equal Rights Ctr. v. Post Props., 633 F.3d 1136, 1141 n.3 (D.C. Cir. 2011).  The Court is only required to consider the materials explicitly cited by the parties, but may on its own accord consider "other materials in the record."  Fed. R. Civ. P. 56(c)(3).

In deciding a motion for summary judgment, courts must generally "view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party."  Scott v. Harris, 550 U.S. 372, 378 (2007) (internal citations and quotation marks omitted).  In making this determination, the court "may not make credibility determinations or otherwise weigh the evidence."  Johnson v. Perez , 823 F.3d 701, 705 (D.C. Cir. 2016).  Thus, "a party may oppose summary judgment with sworn testimony, and . . . that party's own sworn testimony can alone defeat summary judgment."  United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in U.S. Currency, 859 F.3d 1085, 1092 (D.C. Cir. 2017).  Nevertheless, there exist "narrow circumstances under which courts may 'lawfully put aside testimony [because it] is so undermined as to be incredible.'"  Id. (quoting Robinson v. Pezzat, 818 F.3d 1, 10 (D.C. Cir. 2016)).  Specifically, courts may set aside self-serving and uncorroborated testimony "when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, *and* undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury."  Chenari v. George Washington University, 847 F.3d 740, 747 (D.C. Cir. 2017) (emphasis added) (internal citation and quotation marks omitted).  In other words, if "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Lash v. Lemke, 786 F.3d 1, 6 (D.C. Cir. 2015) (quoting Scott, 550 U.S. at 380).

## III.  Analysis

As threshold matters, the parties' briefing raises two questions regarding proper summary judgment procedures: *first,* whether the government's motion is premature prior to any discovery

having been conducted in this Court; and, *second*, whether the Court should consider the government's statement of undisputed facts to be conceded because Jimenez failed to respond to it in the manner required by Local Civil Rule 7(h).  The Court will tackle these questions before considering the merits of Jimenez's non-selection claims.

    A.  <u>Summary Judgment Procedural Rules</u>

        *1.  Pre-Discovery Summary Judgment*

Jimenez urges the Court to deny the government's summary judgment motion because "[p]re-discovery summary judgment motions are usually premature and hence disfavored." <u>Bourbeau v. Jonathan Woodner Co.</u>, 600 F. Supp. 2d 1, 3 (D.D.C. 2009).  Jimenez is correct, as this Court has recently noted, that summary judgment is ordinarily appropriate only after the plaintiff has been given an adequate opportunity to conduct discovery.  <u>See, e.g.</u>, <u>Curtis v. Dep't of Vet. Affairs</u>, 19-cv-3271 (CRC), ECF 39 (D.D.C. June 30, 2020) (Cooper, J.); <u>Glasgow v. United States Dep't of Def.'s</u>, No. 18-CV-136, 2018 WL 5886654, at *3 (D.D.C. Nov. 9, 2018) (Cooper, J.).  Nevertheless, "even at [an] early stage, a district court may deny a request for discovery and grant a motion for summary judgment when the non-moving party 'offer[s] no reasonable basis to suggest that discovery' will bear out its claims.'" <u>Turner v. U.S. Capitol Police</u>, 34 F. Supp. 3d 124, 134-35 (D.D.C. 2014) (quoting <u>Carpenter v. Fed. Nat'l Mortg. Ass'n</u>, 174 F.3d 231, 237-38 (D.C. Cir. 1999)).  Indeed, Federal Rule of Civil Procedure 56(b) specifically allows that "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."

When confronted with a pre-discovery summary judgment motion, it is incumbent upon the opposing party to request discovery under Rule 56(d), which requires the nonmovant to submit an affidavit which "state[s] with sufficient particularity . . . why [additional] discovery

[is] necessary."  Ikossi v. Dep't. of Navy, 516 F.3d 1037, 1045 (D.C. Cir. 2008) (internal citation and quotation marks omitted).  The affidavit must: (1) "outline the particular facts he intends to discover and describe why those facts are necessary to the litigation"; (2) "explain why [he] could not produce [the facts] in opposition to the motion for summary judgment"; and (3) "show the information is in fact discoverable."  Convertino v. U.S. Dep't of Justice, 684 F.3d 93, 100 (D.C. Cir. 2012) (internal citation and quotation marks omitted).

Jimenez has not followed these procedures.  Although he argues in his opposition that summary judgment is premature, he has neglected to file a Rule 56(d) motion or supporting affidavit.  This failure is somewhat surprising.  Not only is Plaintiff's counsel an experienced litigator, the Court advised her during a scheduling conference that if Jimenez intended to oppose the government's motion as premature, then under "Rule 56(d), if there are areas of discovery that you think you need, you have to specify those with some particularity."  Hr'g Tr. 3:23-26 (Oct. 1, 2019).  Jimenez therefore was on notice as to what was required in responding to the government's motion for summary judgment, yet still did not follow the correct procedure.  The Court therefore will exercise its discretion to deny further discovery for failure to adhere to Rule 56(d).

Even if the Court were to generously construe Jimenez's opposition brief as a motion under Rule 56, he still would not be entitled to discovery.  In Jeffries v. Barr, a recent case strikingly similar to this one, the D.C. Circuit largely upheld the district court's decision to grant the government pre-discovery summary judgment on the plaintiff's non-selection claims where the plaintiff had "failed to outline what facts he hoped to discover and why those facts were necessary to support his claims."  965 F.3d 843, 855 (D.C. Cir. 2020).  Because the plaintiff's Rule 56(d) affidavit in Jeffries did not connect "the requested discovery" to the "substance of his

claims," the D.C. Circuit concluded that the district court did not abuse its discretion in denying

the plaintiff's 56(d) motion as to six of his seven non-selection claims.  Id.  Like the plaintiff in

Jeffries, Jimenez fails to identify the facts he seeks to discover, let alone explain why those facts

are necessary to support his claims.  Indeed, rather than pinpoint any required proof, Jimenez

argues the opposite—that "he has sufficient evidence to establish that Defendant's stated reasons

are not credible."  Opp. 29.   The Court therefore rejects Jimenez's argument that the

government's summary judgment motion is premature.

### 2.  *Local Rule 7(h)*

Jimenez's chosen litigation approach also implicates another threshold matter:

compliance with the local rules.  "Litigants before this Court are not only expected to follow its

Local Rules, they are 'duty bound' to do so."  Robinson v. D.C., 130 F. Supp. 3d 180, 186

(D.D.C. 2015) (quoting Texas v. United States, 798 F.3d 1108, 1114 (D.C. Cir. 2015)).  Here,

the government contends that Jimenez has failed to abide by Local Civil Rule 7(h), which

governs summary-judgment practice.  It provides:

> Each motion for summary judgment shall be accompanied by a statement of
> material facts as to which the moving party contends there is no genuine issue,
> which shall include references to the parts of the record relied on to support the
> statement.  <u>An opposition to such a motion shall be accompanied by a separate
> concise statement of genuine issues setting forth all material facts as to which it is
> contended there exists a genuine issue necessary to be litigated, which shall include
> references to the parts of the record relied on to support the statement.</u>  Each such
> motion and opposition must also contain or be accompanied by a memorandum of
> points and authorities and proposed order as required by LCvR 7(a), (b) and (c).  <u>In
> determining a motion for summary judgment, the Court may assume that facts
> identified by the moving party in its statement of material facts are admitted, unless
> such a fact is controverted in the statement of genuine issues filed in opposition to
> the motion.</u>

LCvR 7(h)(1) (emphasis added).

Experienced litigants should know that the "generally observed practice is for the moving party to file its statement of facts, and the opposing party to respond to that statement by indicating whether it 'admits' or 'denies' each fact presented." Murray v. Amalgamated Transit Union, 183 F. Supp. 3d 6, 16 (D.D.C. 2016).  If the opposing party denies a fact, it must include an explanation with citations to competent evidence in the record.  After specifically responding to the moving party's statement of undisputed facts, "the opposing party may then provide its own statement of facts, again with record citations, to the extent it believes such facts are necessary to its argument."  Id.  Lest there be any confusion, although it is best practice to follow this generally observed approach, failure to do so does not necessarily violate Local Rule 7(h). Rather, a party may satisfy Rule 7(h) by providing "a separate concise statement of genuine issues," prepared according to any number of methods, so long as the statement "set[s] forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated" and "include[s] references to the parts of the record relied on to support the statement."  LCvR 7(h)(1).

The government asserts that Jimenez has flouted Rule 7(h)'s requirements because, although he purported to file a statement of facts, that filing: (1) does not reference the government's statement of material facts in a manner that identifies which facts he believes are disputed and which are not (indeed, his statement of facts makes no reference to the government's statement *at all*); (2) includes few citations to the record; and (3) where it does provide citations to the record, frequently either miscites the record or fails to cite competent

evidence.[3]  Plaintiff's Statement of Material Facts in Dispute ("PSOMF"), ECF 41-4.[4]  Based on

these deficiencies, the government urges the Court to deem Jimenez to have admitted the version

of events laid out in the government's statement of undisputed facts.

The sanction sought by the government is expressly contemplated by Local Rule 7(h),

which warns that "the court may assume that facts identified by the moving party in its statement

of material facts are admitted, unless such a fact is controverted in the statement of genuine

issues filed in opposition to the motion."  LCvR 7(h)(1).  Similarly, Federal Rule of Civil

Procedure 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to

properly address another party's assertion of fact . . . , the court may . . . consider the fact

undisputed for purposes of the motion."  And the D.C. Circuit has counseled that "[i]f the party

opposing the motion fails to comply with this local rule, then 'the district court is under no

obligation to sift through the record' and should '[i]nstead . . . deem as admitted the moving

party's facts that are uncontroverted by the nonmoving party's Rule [LCvR 7(h)] statement.'"

SEC v. Banner Fund Int'l, 211 F. 3d 602, 616 (D.C. Cir. 2000) (citation omitted); see also

Oviedo v. Washington Metro. Area Transit Auth., 948 F.3d 386, 398 (D.C. Cir. 2020) (affirming

grant of summary judgment against a *pro se* plaintiff who failed to dispute the defendant's

statement of facts).

---

[3]  As the government pointed out in its reply, Jimenez's statement of facts frequently fails
to identify any evidence in support of the alleged "fact" and, where it does, often includes
misleading citations to the record.  Reply 6-7.  The Court will illustrate these deficiencies below
in its discussion of Jimenez's specific non-selection claims.

[4]  The record includes a "Statement of Facts" contained in Jimenez's opposition, ECF 40
at 1-22, as well as a "Statement of Material Facts in Dispute," ECF 41-4, which Jimenez filed
over a month later, purportedly due to a technical mistake by his counsel.  Both statements are
extremely similar and neither satisfies the requirements of Rule 7(h).  To avoid confusion, the
Court will cite to Jimenez's Statement of Material Facts in Dispute ("PSOMF").

Although "penalizing litigants for violating local rules may seem unduly formalistic, the purposes here are sound and sensible." Robinson, 130 F. Supp. 3d at 186–87. As the D.C. Circuit has explained, "'the procedure contemplated by [Local Rule 7(h)] . . . isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record.'" Burke v. Gould, 286 F. 3d 513, 517 (D.C. Cir. 2002) (quoting Gardels v. CIA, 637 F. 2d 770, 773 (D.C. Cir. 1980) and discussing Rule 7(h)'s predecessor, Rule 108(h)). Holding Jimenez to Rule 7(h)'s requirements is particularly appropriate here. Jimenez's complaint, even after dismissal of numerous non-exhausted claims, spans eleven separate non-selections, each allegedly based on his membership in three different classes as well as retaliation for prior protected activity. Effectively, Jimenez has brought 44 separate claims. And that figure understates the number of Jimenez's claims that are before this one Court. Jimenez is also litigating a second case, based on separate 2013 and 2014 EEO complaints, in which he raises claims of race discrimination, national origin discrimination, retaliation, and hostile work environment based on sixteen other events. This brings the total number of claims this Court must dissect to well over the century mark.

This kitchen-sink litigation approach has yielded several thousand pages of record evidence in this case alone. To make matters worse, Plaintiff's counsel failed to provide a table of contents for her several hundred pages of supporting proof and her citations to the evidence, where provided, often omit document names (i.e. "Ex. 6, p. 521"), making it difficult for opposing counsel and the Court to locate the cited references. This after being granted multiple, lengthy extensions to file her opposition brief, see Minute Order, Oct. 2, 2019 (granting 42-day extension); Minute Order Nov. 22, 2019 (granting additional 24-day extension). The point is not to disparage the validity of Jimenez's claims or his right to seek relief for what he may believe

was unfair treatment.  It is rather to emphasize that, given the vast quantity of his claims, it is incumbent on counsel, as an officer of the Court, to present the claims in a fashion that enables the Court to do its job.

Courts have found comparable deficiencies to warrant treating the movant's statement of material facts as conceded.  E.g., Oviedo, 948 F.3d at 398; Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 151 (D.C. Cir. 1996) (statement of a nonmovant "[r]eplete with factual allegations not material to . . . substantive claims and repeatedly blending factual assertions with legal argument" does not satisfy the purposes of the local rule); Apollo v. Bank of Am., N.A., No. 17-CV-2492 (APM), 2019 WL 5727766, at *1 (D.D.C. Nov. 5, 2019) (dismissing pro se plaintiff's employment discrimination claim for failure to dispute Defendant's statement of undisputed facts in a way compatible with FRCP 56 and Local Rule 7(h)).

Here, Jimenez has failed entirely to "isolate[] the facts that [he] assert[s] are material, distinguish[] disputed from undisputed facts, and identif[y] the pertinent parts of the record." Burke, 286 F.3d at 517 (internal citation and quotation marks omitted).  The Court therefore will treat the entirety of the government's statement of undisputed facts as conceded.  And because those facts establish that USCIS declined to select Jimenez for all eleven positions based on legitimate, non-discriminatory reasons, and do not suggest any pretext for its explanations of those reasons, the agency is entitled to summary judgment.

That said, while the Court will grant summary judgment to USCIS due to Jimenez's failure to comply with Local Rule 7(h), in the interest of efficiency in the event of a successful appeal of the Court's ruling, the Court will proceed to analyze the merits of Jimenez's non-selection claims.  It has thus endeavored, as best it can, to discern which facts might be in dispute and on what basis.  While Jimenez has made this work difficult and time-consuming, the Court

has determined that most of the facts proffered by Jimenez in his purported statement of facts

simply reiterate those in the government's statement.  While Jimenez appears to attempt to

dispute some facts, many of those disputes are either not material to the legal analysis or are not

supported with competent evidence.  The Court will therefore base its analysis of Jimenez's

claims primarily upon the government's statement of facts.  Where relevant, however, it will

discuss what it discerns to be Jimenez's objections to particular facts proffered by the

government.

      B.  <u>Discrete Acts of Discrimination and Retaliation</u>

      Jimenez raises discrimination and retaliation claims under Title VII of the Civil Rights

Act of 1964 and the Age Discrimination Employment Act of 1967 ("ADEA") arising out of

eleven non-selections.

        *1.  Statutory Framework*

      Title VII prohibits employers from "discriminat[ing] against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The

ADEA bars identical discrimination "because of [an] individual's age."  29 U.S.C. § 623(a)(1).

Federal employers are also prohibited by Title VII and the ADEA from retaliating against

employees for asserting their rights under the statutes.  <u>See</u> <u>Calhoun v. Johnson</u>, 632 F.3d 1259,

1261 (D.C. Cir. 2011); <u>Gomez–Perez v. Potter</u>, 553 U.S. 474, 479 (2008).  Due to the similarity

between the two statutes, "courts routinely analyze ADEA claims under the law developed under

Title VII discrimination inquiries."  <u>Peyus v. Lahood</u>, 919 F. Supp. 2d 93, 100 (D.D.C. 2013).

      To establish a *prima facie* case of discrimination for non-selection, a plaintiff must show

that: (1) he is a member of a protected class (or, under the ADEA, that he is at least forty years of

age); (2) he applied for a vacant position; (3) he was qualified for the position; and (4) the person selected was outside of the protected class (or, under the ADEA, was substantially younger than the plaintiff).  See Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1155 (D.C. Cir. 2004); Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000).  Similarly, "[t]o establish a *prima facie* case of retaliation in the form of a non-selection, [a plaintiff] must present sufficient evidence to 'show: (1) that [he] engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; (3) that a causal connection existed between the two[]; (4) that he applied for an available job; and (5) that he was qualified for that position.'"  Mount v. Johnson, 174 F. Supp. 3d 553, 560 (D.D.C.), aff'd, 664 F. App'x 11 (D.C. Cir. 2016) (quoting Morgan v. Fed. Home Loan Mortgage Corp., 328 F.3d 647, 651 (D.C. Cir. 2003)).

For both discrimination and retaliation claims, where the plaintiff can adduce no direct evidence of discrimination or retaliation, as is true here, the Court applies the familiar burden-shifting framework set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). See Glasgow, 2018 WL 5886654, at *3.  Under that framework, a plaintiff must establish "a *prima facie* case of discrimination by showing that [he]: (1) is a member of a protected class; (2) suffered an adverse employment action; and that (3) the unfavorable action gives rise to an inference of discrimination."  Nurriddin v. Bolden, 818 F.3d 751, 758 n.6 (D.C. Cir. 2016).  If the plaintiff succeeds in establishing his *prima facie* case, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions.  McDonnell Douglas, 411 U.S. at 802.  However, the D.C. Circuit has clarified that courts "need not—*and should not*—decide whether the plaintiff actually made out a *prima facie* case under McDonnell Douglas," where "an employee has suffered an adverse employment action" and "an employer has asserted a legitimate, non-discriminatory reason for the decision."  Brady v. Office of

14

Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original).  "Rather, in considering an employer's motion for summary judgment . . . in those circumstances," the district court need resolve only whether the employee has "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory [or non-retaliatory] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the employee."  Id.  The operative question here, then, is whether Jimenez has produced sufficient evidence such that a reasonable jury could find that the actual reason he was not selected for the eleven challenged vacancies is because of his race, national origin, age, or prior EEO activity.

In evaluating a plaintiff's evidence of pretext, "[c]ourts weigh relative qualifications differently in the discriminatory versus the retaliatory non-selection contexts."  Savage v. Burwell, No. 15-CV-00791 (CRC), 2016 WL 4132196, at *6 (D.D.C. Aug. 3, 2016) (Cooper, J.). In *discriminatory* non-selection cases, no inference of discrimination arises unless the plaintiff proves that he was "'substantially more qualified' to perform the duties listed in the vacancy announcement than the successful candidate."  Porter v. Shah, 606 F.3d 809, 815-16 (D.C. Cir. 2010) (quoting Lathram v. Snow, 336 F.3d 1085, 1092 (D.C. Cir. 2003)).  Said otherwise, a plaintiff must demonstrate a "stark superiority of credentials" over the selectee in order to establish an inference of pretext.  Stewart v. Ashcroft, 352 F.3d 422, 429 (D.C. Cir. 2003).  By contrast, the standard in *retaliatory* non-selection cases is more favorable to the plaintiff.  A plaintiff "need not demonstrate that [he] was 'significantly more qualified' than the selectee." Savage, 2016 WL 4132196, at *6 (quoting Román v. Castro, No. 12-cv-01321, 2016 WL 829874, at *12 (D.D.C. 2016)).  Rather, he need only show that the "'relative difference' between [his] qualifications" and those of the selectee "does not so greatly favor" the selectee

"that no reasonable jury could conclude [that he] would have been promoted but for the alleged retaliatory animus" of the deciding officials.  Id. (quoting Kilby-Robb v. Duncan, 77 F. Supp. 3d 164, 176 (D.D.C. 2015)) (internal quotation marks omitted).

Under both standards, the D.C. Circuit has cautioned that neither the ADEA nor Title VII empowers a federal court to become "'a super-personnel department that reexamines an entity's business decisions.'"  Barbour v. Browner, 181 F.3d 1342,1346 (D.C. Cir. 1999) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986).  Thus, courts must "defer to the [employer's] decision of what nondiscriminatory qualities it will seek" in filling a position, Stewart, 352 F.3d at 429, including "the employer's decision as to which qualities required by the job . . . it weighs more heavily," Jackson v. Gonzales, 496 F.3d 703, 709 (D.C. Cir. 2007).  In short, unless the employer's reasons for selecting another candidate are "indeed a pretext, . . . the court must respect the employer's unfettered discretion to choose among qualified candidates." Fischbach, 86 F.3d 1180.

### 2.   The Eleven Non-Selections

Those background principles in mind, the Court turns to analyzing each of the challenged non-selections.   Because the government has asserted a legitimate, non-discriminatory reason for each of the non-selections (as will be discussed below), the Court will assume that Jimenez has made out his *prima facie* case and will focus its analysis on whether he has offered evidence that the government's legitimate, non-discriminatory reasons are pretexts for unlawful discrimination or retaliation.

Before doing so, the Court pauses to note the shortcomings in Jimenez's papers.  Not only does Jimenez's amended complaint make only the barest of allegations regarding the challenged non-selections, see Am. Compl. ¶¶ 26, 28 (alleging merely that "[b]etween June 7,

2012 and September 14, 2012, Plaintiff applied but was not selected for eleven positions within the Agency"), his opposition to the government's summary judgment motion makes little effort to connect the bevy of factual allegations he makes to his broader legal arguments, Opp. 25-30. And though Jimenez recites the facts from two seminal D.C. Circuit employment discrimination cases—Aka v. Washington Hospital Center, 156 F.3d 1284 (D.C. Cir. 1998), and Hamilton v. Geithner, 666 F.3d 1344 (D.C. Cir. 2012)—he does not hint at how those cases are similar to his. The Court has tried its best to discern the thrust of Mr. Jimenez's arguments, but "judges are not like pigs, hunting for truffles buried in briefs or in the record[.]" Jones v. Kirchner, 835 F.3d 74, 83 (D.C. Cir. 2016). "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." Consol. Edison Co. of N.Y., Inc. v. FERC, 510 F.3d 333, 340 (D.C. Cir. 2007). Said simply, "[j]udges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." Schneider v. Kissinger, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005).

       a.   Event # 3: Non-selection for Supervisory Immigration Services Officer Positions (Kendall, Miami, Overland Park and Hialeah, Florida)

In March 2012, USCIS advertised multiple vacancies for the GS-13 position of Supervisory Immigration Services Officer in its Kendall, Miami, Overland Park, and Hialeah, Florida field offices. Def.'s Statement of Material Facts ("SOMF") ¶ 3. The position's duties were described primarily as supervising the adjudication of benefit applications by Immigration Services Officers. Id.; Def.'s Ex. 6 (vacancy announcement). Jimenez applied for the vacancies at each of the four offices, and though he was included on a list of eligible applicants, the

selecting official, Anouchka Castro,[5] did not select him to interview for any of the positions.

SOMF ¶¶ 4-6; Def.'s Ex. 20, Castro Aff. at 423–24.[6]  Ultimately, the following individuals were

selected:

- For the Hialeah office: Maria Coca (Hispanic; year of birth: 1962; no prior EEO complaints). Def.'s Ex. 2, ROI Summary at 9; Def.'s Ex. 16, selection certificate; Def.'s Ex. 10, Coca resume.

- For the Kendall office: Joyce Ortiz (Hispanic; year of birth: 1972; no prior EEO complaints).  SOMF ¶ 9; Def.'s Ex. 2, ROI Summary at 9; Def.'s Ex. 17, selection certificate; Def.'s Ex. 13, Ortiz resume.

- For the Miami office: Amanda Sewall (African-American; year of birth: 1982; no prior EEO complaints).  SOMF ¶ 9; Def.'s Ex. 2, ROI Summary at 9; Def.'s Ex. 18, selection certificate; Def.'s Ex. 14, Sewall resume.

- For the Miami office: Haydee Marrero Harrison (Hispanic; year of birth: 1964; no prior EEO complaints). SOMF ¶ 9; Def.'s Ex. 2, ROI Summary at 9; Def.'s Ex. 18, selection certificate; Def.'s Ex.11, Marrero-Harrison resume.

- For the Overland Park office: Florence Moise-Stone (African-American; year of birth: 1954; no prior EEO complaints).  SOMF ¶ 9; Def.'s Ex. 2, ROI Summary at 9; Def.'s Ex. 19, selection certificate; Def.'s Ex. 15, Moise-Stone resume.

- For the Overland Park office: Suzanne Muirhead Steves (White; year of birth: 1965; no prior EEO complaints).  SOMF ¶ 9; Def.'s Ex. 2, ROI Summary at 9; Def, Ex. 19, selection certificate; Def.'s Ex. 12, Muirhead resume.

Jimenez claims that this non-selection was due to discrimination on the basis of his race, national

origin, age, and reprisal for his prior EEO activity.

_____

[5] For ease of reading, the Court has omitted the titles of the numerous USCIS interviewers and selecting officials mentioned in this opinion.

[6] Jimenez cites testimony from a USCIS branch chief confirming that as a GS-14 applying for a GS-13 position, he automatically qualified as an eligible candidate for the positions.  Opp. 5 (citing Pl.'s Ex. 4, Chiang Aff. at 669-70).  This is irrelevant, however, because it is undisputed that Jimenez did appear on the list of eligible candidates, along with approximately 25 other individuals for each office.  SOMF ¶ 4.  And, merely being an eligible candidate does not entitle an applicant to an interview, much less to be selected for the position.

The government asserts that Jimenez was not chosen to interview for the position because he lacked the desired qualifications.  Ms. Castro explained that she selected interviewees based on prior service as either as a higher-ranking Immigration Services Officer for at least three years within the immediate past five years, or as a Supervisory Immigration Services Officer for at least one year within the immediate past three years.  SOMF ¶ 6; Def.'s Ex. 20, Castro Aff. at 423-24.  Because Jimenez had not served in either capacity during the relevant periods, he was not selected for an interview.  SOMF  ¶ 6.  Although Jimenez had worked as an Adjudications Officer from December 1999 through June 2006, that experience was outside the desired timeframe.  Def.'s Ex. 9, Jimenez Resume at 1154-55.  More recent experience was sought, Ms. Castro explained, because the standards for immigration adjudications change frequently.  See Def.'s Ex. 20, Castro Aff. at 426.  And though Jimenez had served as a GS-14 Immigration Officer for about six years at the time he applied, that experience did not qualify him for the GS-13 Supervisory Immigration Services Officer position because his work as an Immigration Officer was significantly different from that of the Supervisory Immigration Services Officer position advertised.  Compare Def.'s Ex. 7 (Supervisory Immigration Services Officer position description) with Def.'s Ex. 8 (Immigration Officer position description).  Unlike Jimenez, the six selectees all had recent experience working as an Immigration Services Officer or a Supervisory Immigration Services Officer.  See Def.'s Ex. 10, Coca resume; Def.'s Ex. 11, Marrero-Harrison resume; Def.'s Ex. 12, Muirhead resume; Def.'s Ex. 13, Ortiz resume; Def.'s Ex. 14, Sewall resume; Def.'s Ex. 15, Moise-Stone resume.

Jimenez challenges the government's proffered reasons as pretextual on the grounds that Ms. Castro allegedly had knowledge of his race, national origin, and prior EEO activity, Opp. 5, and that he "had more experience than all selectees," id.; PSOMF ¶ 14.  Jimenez fails to establish

pretext.  Even assuming for the sake of argument that Castro was aware of his membership in

protected classes and his prior EEO-activity, Jimenez fails to raise an inference that the

government's proffered reasons were pretextual because he has not shown that the "'relative

difference' between [his] qualifications" and those of the selectees "does not so greatly favor"

the selectees "that no reasonable jury could conclude [that he] would have been [selected] but for

the alleged retaliatory animus" of the deciding officials.  Kilby-Robb, 77 F. Supp. 3d at 176.

Indeed, he makes no effort whatsoever to compare his experience to that of the selectees, nor

does he identify any relevant evidence in support of his blanket statement that he was better

qualified.  Opp. 5.  Jimenez therefore fails to rebut the government's well-supported legitimate,

non-discriminatory reason for not selecting him.  Because he fails to satisfy the more deferential

standard required to show pretext under a retaliatory non-selection claim, he necessarily fails to

establish pretext with regard to his discriminatory non-selection claims.

> b.  Event # 4: Non-selection for Immigration Officer Position (West Palm
> Beach, Florida)

In February 2012, Jimenez applied for a GS-11/13 Immigration Officer vacancy in West

Palm Beach, Florida.  SOMF ¶¶ 12-13.  Timothy Shavers and Adrian Bittner reviewed and rated

the resumes of forty-two eligible applicants based upon their prior experience with adjudications,

public safety cases, and issuing notices to appear.  Id. ¶ 15-16; Def.'s Ex. 28, Shavers Aff. at

521.  Seventeen candidates, including Jimenez, were referred for interviews, which were

conducted by Shavers, Bittner, and Linda Babok.  SOMF ¶¶ 17-18.  Ultimately, Arcadio Reyes

(Hispanic and African-American; year of birth: 1973; no prior EEO complaints) was selected for

the West Palm Beach vacancy.  SOMF ¶ 20; Def.'s Ex. 25, Reyes resume; Def.'s Ex. 26, Agency

Response to Interrog. #5; Def.'s Ex. 27, selection certificates and interview scores.  Jimenez

again asserts that this non-selection was due to his race, national origin, age, and protected activity.

DHS counters that Jimenez was not selected for the positions because he performed poorly in his interview.  As corroborated by contemporaneous notes taken by the interviewers, all three of the interviewers rated Jimenez lower than the selectee because, in their view, he did not answer questions succinctly, tended to ramble, and failed to fully answer the questions. SOMF ¶ 19; Def.'s Ex. 24, Jimenez interview notes; Def.'s Ex. 26, Agency Response to Interrog. #5; Def.'s Ex. 28, Shavers Aff. at 521-22;.  The record confirms that Mr. Reyes was the top-scoring candidate overall.  SOMF ¶ 20; Def.'s Ex. 26, Agency Response to Interrog. #5; Def.'s Ex. 27, selection certificates and interview scores.

Jimenez claims the agency's explanation is pretextual because he did in fact "answer[] all questions asked during the interview," PSOMF ¶ 20, though he fails to cite competent evidence in support of that allegation.  Generally, a plaintiff's own uncorroborated assertion regarding his account of his interview is insufficient to create a genuine issue of material fact where there is contemporaneous evidence to the contrary, such as notes from the interviewers themselves.  See Kargo v. Nat'l R.R. Passenger Corp., 243 F. Supp. 3d 6, 19 (D.D.C. 2017) (concluding that a plaintiff's impression of his own interview performance was insufficient to establish pretext); see also Chenari, 847 F.3d at 747 (noting that courts may set aside self-serving and uncorroborated testimony where "a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury").  Moreover, it is well-established that employers are permitted to base hiring decisions on such intangible qualities as interview performance.  See Fischbach, 86 F.3d

at 1183–84 ("[S]electing a pool of qualified candidates based upon their written credentials and then making a final selection based upon personal interviews is an obviously reasonable method of hiring a professional employee."). On this record, no reasonable jury could find that discrimination or retaliation was the reason for Jimenez's non-selection.

Jimenez further claims that he was better qualified than Mr. Reyes because he had a higher grade level, the position was the same one he had successfully held in 2006-07, he had "served as District Adjudication Officer for over five years at the Miami District Office," and he had worked "an Immigration Inspector at the Miami International Airport for over two years." Opp. 5. This argument fails as well. First, the fact that Jimenez held a GS-14 grade position does not establish an inference of pretext simply because he applied for a lower-grade position. Moreover, though he asserts that his qualifications are superior, he makes no effort to tie those qualifications to the actual requirements of the vacancy. Opp. 7. Nor does he compare his qualifications to Mr. Reyes'. Id. Jimenez therefore fails to raise a genuine dispute as to whether he was "'substantially more qualified' to perform the duties listed in the vacancy announcement than the successful candidate." Porter, 606 F.3d at 815-16. Nor does he show, with regard to the retaliatory non-selection claim, that "'relative difference' between [his] qualifications" and those of the selectee "does not so greatly favor" the selectee "that no reasonable jury could conclude [that he] would have been promoted but for the alleged retaliatory animus" of the deciding officials. Savage, 2016 WL 4132196, at *6.

        c.   Event # 5: Non-selection for Immigration Officer Position (Frankfurt, Germany)

In January 2012, Jimenez unsuccessfully applied for another Immigration Officer position, this one a GS-12-level post in Frankfurt, Germany. SOMF ¶¶ 24-25. The responsibilities of the position included, *inter alia*, serving as the lead staff member responsible

for fraud detection and national security-related issues in the agency's Rome District, working on individual fraud detection and national security cases, providing fraud detection and national security case support to the Rome District's ten field offices, and serving as a fraud detection and national security liaison between Rome District staff and other entities.  Id.; Def.'s Ex. 35, Lafferty Aff. at 536.  The reviewing panel—John Lafferty, Cheri Ho, and Kristina Carty-Pratt—rated eligible candidates' resumes based on: (i) direct or analogous fraud detection and national security experience; (ii) adjudications experience, both generally and with regard to refugee and asylum adjudications; (iii) supervisory experience; (iv) public outreach and training experience; (v) education; and (vi) previous overseas experience.  SOMF ¶ 26.  Additionally, for candidates who scored above a quantitative threshold based on their resumes, the panel sought references to determine which candidates would advance to the interview round.  Id.  Ultimately, Christopher Robinson (Caucasian; national origin unknown; year of birth: 1971) was selected for the position.  SOMF ¶ 29; Def.'s Ex. 2, ROI Summary at 13. Jimenez claims that he was not selected for an interview due to impermissible discrimination and in retaliation for protected activity.

The government asserts that Jimenez was not selected to interview for this position because, although he presumably met the quantitative cut-off, the panel received two negative references from his former managers concerning his performance as a fraud detection and national security Immigration Officer.  SOMF ¶ 28.  Specifically, his past managers reported that Jimenez demonstrated weak writing skills and overall sub-par work performance.  Id.; see Def.'s Ex. 26, Def.'s Agency Response to Interrog.at #4 and #7; Def.'s Ex. 35, Lafferty Aff. at 542. Further, although Jimenez had held a fraud detection and national security position, at the time the interviewees were selected he lacked experience with refugee or asylum adjudications; supervisory experience; formal public outreach, training, or liaison duties; and overseas

23

experience (other than serving in the military some 18 years prior).  SOMF ¶ 26; Def.'s Ex. 31, Jimenez resume.

Jimenez claims that the government's stated explanation for not selecting him is pretextual for three reasons.  First, he contends that he was better qualified than the selectee, Christopher Robinson, because Robinson lacked experience as a fraud detection and national security Immigration Officer.  Opp. 9-10.  Though Robinson had not been a fraud detection and national security Immigration Officer, he possessed a master's degree, recent adjudications experience as a Supervisory Immigration Services Officer (including a detail as an Overseas Adjudications Officer in Bangkok, Thailand) in a wide variety of immigration benefit applications, had prior supervisory experience, received strong references, and was proficient in German.  SOMF ¶¶ 27-31; see Def.'s Ex. 32, Robinson resume; Def.'s Ex. 34, Mar. 28, 2012 Lafferty recommendation memo; Def.'s Ex. 35, Lafferty Aff. at 537-40; Def.'s Ex. 36, Carty-Pratt Aff. at 566-68.  In contrast, Jimenez did not have an undergraduate or master's degree, had more remote adjudications experience, had never held a supervisory position, received poor references from supervisors, and spoke no German.  SOMF ¶ 28; see Def.'s Ex. 26, Agency Response to Interrog. at #4 and #7.  Given these relative qualifications, Jimenez fails to establish pretext.

Next, Jimenez contends that his two negative references contained "false allegations." Opp. 8.  He insists that one reference, Rand Gallagher, lied about his performance and the other, Robert Blackwood, never actually spoke to the reviewing officials.  Id. at 8-9.  These contentions also fail to create an inference of pretext.  To start, Jimenez never identifies what was false about Gallagher's negative assessment of him, let alone offer any evidence for such a claim.  And while Gallagher stated in an affidavit that he was never asked to provide a reference for Jimenez,

he subsequently corrected that statement and attested that, upon refreshing his memory with emails from the time, he had indeed told the reviewing official that Jimenez's "writing and overall work products were poor and his knowledge base was lacking."  Def.'s Ex. 26, Agency Response to Interrog. at #7.  Mr. Blackwood's refreshed recollection does not raise an inference of pretext.

Lastly, Jimenez contends that the selecting officials for this position, Lafferty and Carty-Pratt, did not select any Hispanic candidates for a period of two years.  Opp. 10.  Even assuming that is true, which is not clear from the record, see Def.'s Ex. 36, Carty-Pratt Aff. at 571; Def.'s Ex. 35, Lafferty Aff. at 543, the fact that no Hispanic candidates were selected over a period of two years, in isolation, is insufficient to establish an inference of pretext here.  Though the lack of minority selectees over a meaningful time period "is certainly relevant to a showing of pretext in disparate treatment actions" it is "'less significant' in an individual disparate treatment case where 'the ultimate issue is whether the *particular* plaintiff was the victim of an illegitimately motivated employment decision.'"  Boone v. Clinton, 675 F. Supp. 2d 137, 145 (D.D.C. 2009) (quoting Krodel v. Young, 748 F.2d 701, 710 (D.C. Cir. 1984)) (emphasis in original).  In individual discrimination cases, statistical evidence is therefore "ordinarily not dispositive."  Krodel, 748 F.2d at 710.  Rather, to establish pretext in individual cases by relying on statistical evidence, a plaintiff is required to establish "how many qualified applicants applied for the positions [in total], the number of qualified applicants of various racial groups, and the race of the selectees."  Choates v. Powell, 265 F. Supp. 2d 81, 94 (D.D.C. 2003); see City of Richmond v. J.A. Croson Co., 488 U.S. 469, 501-02 (1989) ("[W]here special qualifications are necessary, the relevant statistical pool for purposes of demonstrating discriminatory exclusion must be the number of minorities qualified to undertake the particular task.").  Without offering any of that

data here, and especially in light of the limited two-year time period at issue, Jimenez has failed to establish pretext.

d. Event # 6: Non-selection for Adjudications Officer Positions (Monterrey, Mexico)

In January 2012, Jimenez unsuccessfully applied for a GS-13 position as an Adjudications Officer in Monterrey, Mexico. SOMF ¶ 33. The resumes of the twenty-three eligible candidates were divided up and reviewed by Joseph Roma, Mari-Carmen Jordan, James Chiang, and Gilda Velasco. Id. ¶ 35. Jimenez's application was only reviewed by Mr. Roma, who did not select him for an interview. Id. ¶ 36. After the interviews were concluded, Alfred Ongcapin (Asian; year of birth: 1966; no prior EEO complaints) was initially selected for the vacancy, but after he declined, the agency tapped Jeremy Eirich (Native American; year of birth: 1973; no prior EEO complaints). Id. ¶ 39. Jimenez maintains that his non-selection was based on his race, national origin, age, and previous EEO activity.

The government asserts that Roma declined to select Jimenez for an interview because Jimenez's resume did not demonstrate: fraud detection and national security field work (as opposed to similar experience at USCIS headquarters), adjudication experience related to USCIS Form I-601 (the primary form handled by the Monterrey field office), supervisory experience, or overseas experience. Id. ¶¶ 35-37. Additionally, Roma determined that Jimenez should not proceed to an interview because he lacked an undergraduate or master's degree and had performed poorly in a prior interview for a competitive selection for another Mexico City district vacancy. Id. ¶¶ 37–38; Def.'s Ex. 42, Roma Aff. at 637. DHS further contends that the record shows both Ongcapin and Eirich to be considerably more qualified applicants. Roma determined that Ongcapin was the best qualified candidate because, unlike Jimenez, he had significant supervisory experience, including as a fraud detection and national security Supervisory

Immigration Officer, an Acting Field Office Director, and a Supervisory Adjudications Officer. Def.'s Ex. 39, Ongcapin resume.  Further, Ongcapin had significant adjudications and overseas experience and held two law degrees.  Id.  After Ongcapin withdrew his application, Eirich was selected for the vacancy because, again unlike Jimenez, he had significant fraud detection and national security field work, including as a supervisor, as well as knowledge of USCIS database systems.  SOMF ¶¶ 39-40; Def.'s Ex. 40, Eirich resume; Def.'s Ex. 42, Roma Aff. at 613-15.

Despite the overwhelming record evidence supporting the government's legitimate, non-discriminatory reasons for not selecting Jimenez, he contends that these reasons are pretextual. To start, he maintains that Roma offered a shifting explanation for whether knowledge of Mexican culture and Spanish fluency were required for the position.  Opp. 11-12.  That mischaracterizes the record:  Roma never stated that either were required for the vacancy.  Def.'s Ex. 42, Roma Aff. at 615-16.  Switching gears, Jimenez argues that Roma was initially unable to explain to the EEO investigator why Jimenez was not selected for an interview and only later came up with an explanation.  Opp. 11.  Again, Jimenez misstates the evidence, which reveals that Roma was not directly asked why Jimenez was not interviewed in his conversation with the EEO investigator.  Def.'s Ex. 42, Roma Aff. at 613-16.  Lastly, Jimenez attempts to manufacture a genuine issue of material fact by claiming that one of the panel members, Marie Carmen-Jordan, gave contradictory reasons as to why Jimenez was less qualified than the selectee.  Opp. 12-13.  Yet, close examination of the record reveals no contradiction.  Carmen-Jordan first stated that Jimenez was not selected to interview because there were more qualified candidates, and when pressed for greater detail, she explained that while she was aware of the general reason why Jimenez was not selected, Def.'s Ex. 43, Carmen-Jones Aff. at 660, she could not describe

the reasons in detail because only Mr. Roma reviewed his application, Def.'s Ex. 43, Jordan

Supp. Aff. at 138.

As to this non-selection, then, the record evidence conclusively shows that no reasonable

jury could find that DHS discriminated against Jimenez based on race, national origin, age, or

prior EEO activity.

> e. Event # 7: Non-selection for Adjudications Officer Positions (Mexico City, Mexico)

In February 2012, Jimenez applied for a GS-12 Adjudications Officer position in Mexico

City and made the list of eligible candidates.  SOMF ¶¶ 42-43.  The reviewing panel, which

consisted of Joseph Roma, Mari-Carmen Jordan, and Jack McCarthy, selected eight candidates

for interviews based on experience with the same type of immigration benefit applications

processed in the Mexico City field office; overseas experience; ability to get along well in a

diplomatic environment; educational background and Spanish language speaking skills; any

other relevant experience; references; and the panel members' prior personal and professional

experiences with the candidate.  SOMF ¶ 44; see also Def.'s Ex. 42, Roma Aff. at 617-18; Def.'s

Ex. 43, Jordan Aff. at 647.  Jimenez was not selected for an interview.  SOMF ¶ 44.  Ultimately,

Miguel Chavez (Hispanic; year of birth: 1957) was selected for the vacancy.  SOMF ¶ 45; see

Def.'s Ex. 42, Roma Aff. at 617; Def.'s Ex. 43, Jordan Aff. at 647; Def.'s Ex. 49, selection

certificate.

The government explains that Jimenez was not chosen to interview for the position

because he had inferior qualifications.  His resume did not demonstrate any experience

adjudicating I-601 applications (the immigration applications handled by the Mexico City field

office) or with the field office's case management system, and he held only an associate's

degree.  Def.'s Ex. 42, Roma Supp. Statement at 638; Def.'s Ex. 47, Jimenez resume.

Additionally, Jimenez had performed poorly in a prior interview for a position in the Mexico City office.  Def.'s Ex. 42, Roma Supp. Statement at 638.  In contrast, Mr. Chavez had experience with Form I-601 applications and had conducted training on the case management system used by the office.  Id.

Jimenez attempts to poke holes in this explanation.  He contends that Roma did not explain why he was not selected for the vacancy during the initial EEO investigation and only offered an explanation two years later, during the supplemental EEO investigation.  Opp. 13. This argument is spurious.  During the first administrative investigation, Roma stated that Jimenez's qualifications "are not as great as the qualifications and experience of the candidate who was selected," Def.'s Ex. 42, Roma Aff. at 623-24, while in the supplemental investigation, he simply provided additional detail as to why Jimenez's qualifications were inferior, Def.'s Ex. 42, Roma Supp. Aff. at 132.  These responses are entirely consistent, specifically responsive to the questions asked, and do not create an inference of pretext simply because Roma provided further detail during the second administrative investigation when specifically asked to explain "in detail" why Jimenez was not selected.  Id.[7]

Jimenez further asserts that he is better qualified than the selectee, Opp. 14, but offers no supporting evidence beyond his own self-assessment.  A job candidate's "own personal opinion is inadequate by itself to create an issue for the jury."  Walker v. Johnson, 798 F.3d 1085, 1094 (D.C. Cir. 2015); see also Dyer v. McCormick & Schmick's Seafood Restaurants, Inc., 264 F. Supp. 3d 208, 229 (D.D.C. 2017) (explaining that an applicant's "own 'subjective assessments of

---

[7]  Jimenez raises this same argument with regard to Event #8.  It fails there for the same reason.  Def.'s's Ex. 42, Roma Aff. at 628-29; Def.'s's Ex. 42, Roma Supp. Aff. at 132.

[his] own credentials,' were 'largely irrelevant' for purposes of establishing discriminatory motive").

> f.  Event # 8: Non-selection for Adjudications Officer Positions (San Salvador, El Salvador)

In March 2012, Jimenez applied for a GS-13 Adjudications Officer vacancy in San Salvador, El Salvador, and made the list of eligible candidates.  SOMF ¶¶ 47–49.  The applicants' resumes were reviewed by Joseph Roma, Mari-Carmen Jordan, and Paul Mitchell, who selected eight candidates for interviews according to the following criteria: experience with adjudications of the same type of immigration benefit applications processed at the post; overseas experience; ability to thrive in a diplomatic environment; education and Spanish language speaking skills; any other relevant experience; and references and prior personal and professional experiences with the candidate during the course of business.  Id. ¶ 51; Def.'s Ex. 42, Roma Aff. at 625-26; Def.'s Ex. 54, Mitchell Aff. at 690.

The panel did not invite Jimenez to interview because they determined that his resume, at some fifteen pages, was not tailored to the vacant position and did not sufficiently explain his past employment experience.  SOMF ¶ 52; see Def.'s Ex. 54, Mitchell Aff. at 692.  After conducting interviews, Jose Trujillo (Hispanic; year of birth: 1962; no prior EEO complaints) was selected for the vacancy.  SOMF ¶ 53; see Def.'s Ex. 42, Roma Aff. at 624-25; Def.'s Ex. 53, selection certificate; Def.'s Ex. 54, Mitchell Aff. at 692; Def.'s Ex. 54a, May 30, 2012 recommendation memo.  Mr. Trujillo possessed superior qualifications to Jimenez in that he had experience in field offices that adjudicated immigration benefit applications, including the primary type of application adjudicated by the San Salvador field office; had conducted outreach in the specialized military area; and had supervised adjudications.  SOMF ¶ 54; see Def.'s Ex.

42, Roma Aff. at 625-30 and Roma Supp. Statement at 640-41; Def.'s Ex. 52, Trujillo resume;

Def.'s Ex. 54a, recommendation memo.

Jimenez charges that this explanation is pretextual and that he should have been selected

for this position.  First, he contends that Mr. Mitchell could not explain why the selectee was

more qualified than him.  Opp. 15.  Like many of Jimenez's claims of pretext, this one is also

premised on a mischaracterization of the record.  When the administrative investigator asked

Mitchell to compare Trujillo to Jimenez based on "interview performance, reference checks,

recommendations, etc.," Mitchell explained that he could not do so using those parameters

because Jimenez was not selected for an interview.  Def.'s Ex. 54, Mitchell Aff. at 692.  Mitchell

then proceeded to explain why Jimenez was not selected for an interview.  Id.  Nothing about

that testimony suggests pretext.

Jimenez next locates pretext in an email in which Mitchell stated that he did not have

concrete criteria for selecting candidates to interview.  Opp. 15.  Again, he selectively misreads

the record.  Mitchell stated that while he did not have strict "criteria for selecting the[] people [to

interview]," he relied upon his own "past experience" and selected interviewees based on those

who "st[ood] out for whatever reason in their resume."  Pl.'s Ex. 15, Mitchell Email.  This

explanation is consistent with his subsequent affidavit, in which he attested that Jimenez was not

selected because of the poor quality of his resume and that he selected interviewees based on

their resumes, his personal knowledge of the applicants' work, and their positive references.

Def.'s Ex. 54, Mitchell Aff. at 690-92.  In any event, any dispute over this email is immaterial

because there is abundant evidence that Mr. Trujillo, who is also Hispanic and is older than

Jimenez, was more qualified.  SOMF ¶ 54; see Def.'s Ex. 42, Roma Aff. at 625-30 and Roma

Supp. Statement at 640-41; Def.'s Ex. 52, Trujillo resume; Def.'s Ex. 54a, recommendation

memo.  No reasonable jury could find that the reason for Jimenez's non-selection was his protected status, as opposed to the fact that he was much less qualified than the selectee.

Lastly, Jimenez reiterates his blanket contention that he was better qualified than Trujillo based on his past adjudications experience, knowledge of Spanish, and experience overseas. PSOMF ¶ 78.  Jimenez again fails to provide any competent evidence in support of this allegation, citing only his own prior statement in the EEO affidavit.  This too falls short of establishing pretext.  Dyer, 264 F. Supp. 3d at 229 (explaining applicant's "own 'subjective assessments of [his] own credentials,' were 'largely irrelevant' for purposes of establishing discriminatory motive").

### g.   Event # 9: Non-selection for Immigration Services Officer Position (Miami, FL)

In May 2012, USCIS announced a vacancy for one or more GS-13 Immigration Services Officer positions in Miami, Florida, and Jimenez applied.  SOMF ¶¶ 55–56.[8]  The position required overseeing the adjudication of immigration benefit applications by nonsupervisory immigration services officers, among other duties.  SOMF ¶ 55.  Jimenez's name was included on the list of fifteen eligible candidates, all of whom were interviewed.  SOMF ¶ 57.  The interview panel consisted of Anouchka Castro, Brett Lassen, and Kim Dean.  SOMF ¶ 58.  They assessed candidates based on, *inter alia*, their interviews, writing sample, knowledge of fraud detection and national security, and leadership philosophy.  Id.; see Def.'s Ex. 20, Castro Supp. Aff. at 427-28.  After interviewing the candidates, Jimmy Zenny (African-American; year of birth: 1959; prior EEO complaints) was selected for the vacancy.  SOMF ¶ 59; see Def.'s Ex. 20,

---

[8]  Although the vacancy announcement stated that DHS intended to fill "one or more positions" using the vacancy announcement, Def.'s Ex. 55, vacancy announcement at 2, it is undisputed that the government only hired one person, SOMF ¶ 59.

Castro Aff. at 428; Def.'s Ex. 59, recommendation email; Def.'s Ex. 57, Zenny resume.  Jimenez

contends that he was discriminated against on the basis of race, national origin, age, and

protected activity when he was not selected for this position, even though the selectee is older

than Jimenez and also has prior EEO complaints.

The government explains that Zenny possessed superior qualifications because he had

supervisory experience and had conducted fraud detection and national security work in field

offices, whereas Jimenez lacked supervisory experience and had fraud detection and national

security experience only at USCIS headquarters.  SOMF ¶ 59.  Rejecting this explanation,

Jimenez contends that he had superior qualifications because he had worked at various fraud

detection and national security field offices and had supervisory experience.  Opp. 16.  Yet,

Jimenez has not identified any evidence, by reference to his resume or otherwise, to support

those contentions.  Id.  He therefore fails to establish a genuine issue of material fact with regard

to the government's legitimate, nondiscriminatory reasons for not hiring him.

> h.  Event # 10: Non-selection for Adjudications Officer Position
> (Bangkok, Thailand)

In December 2011, Jimenez applied for a GS-13 Adjudications Officer position in

Bankgok, Thailand, and made the list of eligible candidates, along with 70 other applicants.

SOMF ¶¶ 62–62.  The resumes were reviewed by Sarah Shergill, who selected interviewees

based on the following criteria: completion of one of three of the agency's refugee-related

training courses in the prior three years, or the completion of any of those courses at any time

along with experience adjudicating or supervising the adjudication of Form I-589 (Application

for Asylum and Withholding of Removal) or I-590 (Registration for Classification as Refugee)

within the prior three years.  SOMF ¶ 66; see Def.'s Ex. 64, Bannis Aff. at 740; Def.'s Ex. 65,

Shergill Aff. at 757-58; Def.'s Ex. 66, Recommendation Memo at 2.  Jimenez was not selected

for an interview.  SOMF ¶ 66.  Ultimately, Shawn Mongin (Caucasian, year of birth: 1980; no

prior EEO complaints) was recommended for the vacancy and the selecting official, Pius Bannis,

concurred in the recommendation.  SOMF ¶ 67; see Def.'s Ex. 64, Bannis Aff. at 741; Def.'s Ex.

65, Shergill Aff. at 757-58.  Jimenez contends that he was not selected for this position because

of his race, national origin, age, and in retaliation for protected activity.

      The government's legitimate, nondiscriminatory reason for not interviewing Jimenez is

that he lacked refugee experience and had not taken any of the three desired refugee courses or

handled the designated immigration forms.  Def.'s Ex. 64, Bannis Aff. at 741-42; Def.'s Ex. 65,

Shergill Aff. at 759; Def.'s Ex. 66, Recommendation memo.   Indeed, nothing in the record

suggests that Jimenez had the refugee-related experience required for the position, including

having completed the necessary training courses.  And Jimenez does not contest otherwise.

PSOMF ¶¶ 87-94.  Mr. Mongin, by contrast, had significant refugee experience.   He had taken

one of the necessary courses, had experience supervising the adjudication of Form I-589 and I-

590 applications, and had worked with refugees through his work in the USCIS Refugee Affairs

and International Operations Directorate for approximately five years immediately prior the

vacancy announcement.  Def.'s Ex. 62, Mongin resume and references; Def.'s Ex. 64, Bannis

Aff. at 741-42; Def.'s Ex. 65, Shergill Aff. at 759; Def.'s Ex. 66, Recommendation memo.

Additionally, Mongin had lived overseas and held a law degree, as well as a master's degree.

Def.'s Ex. 66, Recommendation memo; Def.'s Ex. 65, Shergill, Aff. at 758; Def.'s Ex. 62,

Mongin resume and references.

      Despite the obvious disparity in relevant qualifications, Jimenez nonetheless maintains

that the government's reasons are pretextual.  The real reason he was not selected for an

interview, he suggests, is that Joanna Ruppel—who was *not* the concurring official for this

vacancy but who supervised the concurring official, Bannis—had once issued a memorandum directing her staff, including Bannis, not to interview Jimenez.  Opp. 3, 17.  Jimenez's argument fails for at least two reasons.  First, he does not include a copy of Ruppel's purported memorandum in the record; he only refers to his own description of it in his EEO affidavit.  <u>See</u> <u>supra</u> n.2.  Even in Jimenez's telling, though, the memorandum does *not* discuss prospective vacancies, only a prior one in April 2009.  Pl.'s Ex. 1 at 233-34.  Second, there is no evidence that the officials who made the decision regarding whom to interview were aware of any such memorandum.  Significantly, Jimenez does not allege that Ruppel was otherwise involved in the selection process.  PSOMF ¶¶ 87-94.  Because "mere speculation is insufficient to create a genuine issue of fact," Jimenez fails to establish pretext.  <u>Guillen-Perez v. D.C.</u>, No. 17-CV-2086 (CRC), 2019 WL 6329508, at *5 (D.D.C. Nov. 26, 2019).[9]

> i.  <u>Event #11: Non-selection for Immigration Officer Position</u>
> <u>(Miami, FL)</u>

In June 2012, USCIS posted a vacancy for a GS-11/13 Immigration Officer position in Miami, Florida.  SOMF ¶ 70; <u>see</u> Def.'s Ex. 67, vacancy announcement.  Jimenez applied and made the list of eligible candidates.  SOMF ¶ 72.  The applicants' resumes were reviewed by Paul Buono, Rodolfo Nunez, and Anouchka Castro, who rated them based on whether the candidate possessed three years' experience within the immediate past five years as either (i) a field fraud detection and national security Immigration Officer or supervisor; (ii) a field adjudications officer/Immigration Services Officer Level 2 or senior adjudications officer with

---

[9]  Unlike with many of the other non-selections, Jimenez does not allege that he was more qualified than the selectee.  PSOMF ¶¶ 87-94; Opp. 17: ¶¶ 103-10.  For good reason.  As described above, there is robust evidence showing that the selectee was more qualified for the position, in light of his considerable refugee experience.

experience in adjudicating applications that require in-person interviews; or (iii) a field law enforcement officer with experience in conducting interviews, performing research, and assisting in the apprehension or prosecution of suspected violators.  SOMF ¶ 74.  The panel also considered the quality of the applicants' resumes, specifically with regard to whether the applicants with law enforcement backgrounds would have the skills and experience necessary to conduct interviews and detect fraud.  SOMF ¶ 74; see Def.'s Ex. 20, Castro Aff. at 431-32; Def.'s Ex. 22, Swacina Aff. at 394.  Jimenez's resume was reviewed by Mr. Buono, Mr. Nunez, and Ms. Castro, who did not invite him to interview.  See Def.'s Ex. 20, Castro Aff. at 431-32; Def.'s Ex. 22, Swacina Aff. at 393.  In the end, Yadira Dominguez (Hispanic; year of birth: 1977; no prior EEO complaints) and Daniel Lower (Hispanic; year of birth: 1970; no prior EEO complaints) were selected to fill the vacancies.   SOMF ¶ 78; see Def.'s Ex. 2, ROI Summary at 24; Def.'s Ex. 22, Swacina Aff. at 394; Def.'s Ex. 20, Castro Aff. at 432; Def.'s Ex. 72, August 2012.  Jimenez alleges again that his non-selection was due to discrimination and retaliation.

The government explains that Jimenez was not selected to interview because although he had worked as a fraud detection and national security Immigration Officer for many years, his experience was at USCIS headquarters, not in the field, as was desired for the position.  SOMF ¶ 75; Def.'s Ex. 20, Castro Aff. at 432-34.  Additionally, his adjudications experience and purported law enforcement experience were outside the desired timeframes and his resume was of poor quality.  SOMF ¶ 75; Def.'s Ex. 20, Castro Aff. at 432-34.

Jimenez attempts to create a factual dispute regarding the real reason that Ms. Castro, one of the three officials who reviewed resumes, did not select him for an interview.  He contends that she incorrectly stated that he lacked fraud detection and national security experience, Opp. 19, but Jimenez again mischaracterizes the record.  Castro explained that Jimenez lacked "*field*

36

FDNS experience (although he was given some credit for FDNS experience)."  Def.'s Ex. 20, Castro Aff. at 432 (emphasis added).  Though Jimenez contends (again without identifying any competent evidence) that in his role as a fraud detection and national security Immigration Officer at USCIS headquarters he provided "guidance and counsel to the Field," Opp. 19, he does not dispute that at the time he applied to the vacancy, he did not actually work in a field office.  Similarly, Jimenez maintains that Castro's explanation that she chose to not to interview him because of his lack of current adjudications experience is pretextual because he had worked in the Miami field office.  The government does not dispute this, but notes that Jimenez's adjudications experience ended in June 2006, six years before the vacancy, and Castro sought adjudications experience within the five years preceding the announcement.  SOMF ¶¶ 74-75.  Jimenez does not contest that the two selectees satisfied that criteria.  He therefore has not raised an inference of pretext.

> j.   Event # 12: Non-selection for Adjudications Officer Position (Moscow, Russia)

In March 2012, USCIS opened multiple vacancies for GS-13 Adjudications Officer positions in Moscow, and Jimenez applied.  SOMF ¶ 81.  Susan Aikman, Cheri Ho, and John Lafferty reviewed the resumes of eligible applicants against the following rating criteria: current qualifications to conduct refugee interviews pursuant to a June 2009 agency memo; adoption case experience; experience handling other immigration benefit applications adjudicated overseas; and previous overseas and supervisory experience.  Id. ¶ 84.  Only prior refugee experience was absolutely required, while the other criteria would weigh positively in a candidate's favor if present.  Id. ¶ 84.  Jimenez was not selected for an interview.  After concluding the interviews, which were conducted by the same panel, the panel recommended David Tarr (Caucasian; year of birth: 1957; no prior EEO complaints), Gina Short (Asian-

American; year of birth: 1973; no prior EEO complaints) and Jane Kochman (African-American, 1959; no prior EEO complaints) for the vacancies.  Id. ¶ 85.  After Ms. Kochman withdrew from consideration, Mr. Tarr and Ms. Short filled the vacancies.  Id.

The government explains that Jimenez was not selected for an interview because he had no training or experience in adjudications of refugee and asylum applications, which was the primary job responsibility of the vacant positions.  SOMF ¶ 85; see Def.'s Ex. 35, Lafferty Supp. Aff. at 554-55. Additionally, he lacked prior experience representing USCIS overseas and his adjudication experience was more than five years old.  SOMF ¶ 86; Def.'s Ex. 74, Jimenez Resume.  Further, the panel determined that Jimenez's experience with fraud detection and national security work was not relevant because the position did not include those responsibilities.   SOMF ¶ 85; see Def.'s Ex. 35, Lafferty Supp. Aff. at 552-53, 555; Def.'s Ex. 80, Ho Aff. at 772, 775.

This explanation was pretextual, Jimenez contends.  He points to the affidavit of Mr. Lafferty, one of the resume review panelists, which Jimenez says incorrectly stated that he was "unqualified" because he "had no apparent training or experience adjudicating such cases and only generic immigration adjudications experience five years prior."  Opp. 20.  Once again, Jimenez plays loose with the facts.  Lafferty's affidavit does not describe Jimenez as "unqualified," and his statement regarding Jimenez's lack of experience concerned refugee and asylum applications, not the immigration applications that Jimenez had handled previously. SOMF ¶ 86; Def.'s Ex. 35, Lafferty Aff. at 552-555.  Jimenez does not dispute that he lacked refugee and asylum application experience or that such experience was the primary qualification for the position.  He has thus failed to create an inference of pretext.

    k. Event # 13: Non-selection for Supervisory Immigration Services
      Officer Positions, (Overland Park and Miami, Florida)

Jimenez's final non-selection claim is based on his application in July 2012 for GS-13 Supervisory Immigration Services Officer positions in Overland Park and Miami, Florida. SOMF ¶ 89.  The position required the selectees to oversee the adjudication of immigration benefit applications by non-supervisory immigration services officers.  Id.  Jimenez applied to the vacancies for both offices and was determined to be an eligible candidate.  Id. ¶ 91.  The panel that reviewed the applications consisted of Anouchka Castro, Paul Buono, and Steven Koch and selected candidates to interview based on the following criteria: three years' experience within the preceding five years as either an Immigration Services Officer with experience adjudicating naturalization applications and in-person adjustment interviews or as a supervisor with experience overseeing immigration services officers who did the same.  SOMF ¶ 93; Def.'s Ex. 20, Castro Aff. at 443-45.  The panel did not select Jimenez because he had not served as an Immigration Services Officer or Supervisory Immigration Services Officer during the requisite timeframe immediately prior to the vacancy announcement.  SOMF ¶ 94; Def.'s Ex. 20, Castro Aff. at 446-47.  Following the interview process, Alice Munroe (African-American; year of birth: 1974; no record of prior EEO complaints) was recommended and selected for the Oakland Park vacancy.  SOMF ¶ 96.  No one was selected for the position in Miami.  SOMF ¶ 96; Def.'s Ex. 20, Castro Aff. at 445-46; Def.'s Ex. 87, Oct. 29, 2012 email regarding selections.

This government's explanation for his non-selection is pretextual, Jimenez alleges, because one of the resume reviewers, Ms. Castro, inaccurately stated that he lacked supervisory experience and more recent adjudications experience.  According to Jimenez, he gained supervisory experience by serving as a "back-up manager" and acting supervisor in the past and had adjudicated immigration benefit applications at the Miami District office.  Opp. 21-22;

PSOMF ¶¶ 122, 124.  This fails to establish pretext, however, because Ms. Castro was aware of Jimenez's past stint as a supervisor, but nevertheless decided not to interview him because his supervisory experience was insubstantial and his experience with adjudications was "dated." Def.'s Ex. 20, Castro Aff. at 446-47.  Jimenez retorts that Castro's characterization of his experience as "dated" evidences age bias.  Opp. ¶ 139.  But, plainly, requiring recent experience is a valid, age-neutral hiring criterion.

## IV.   Conclusion

For the foregoing reasons, the Court will grant Defendant's Partial Motion for Summary Judgment.  A separate Order shall accompany this memorandum opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>September 24, 2020</u>